Donahue, J.
In the case of The State of Ohio v. Schmuck, 77 Ohio St., 438, this court held that Sections 4364-42, 4364-43, 4364-44 and 4364-45, Revised Statutes, were in conflict with Sections 1, 14 and 19 of Article I of the Constitution of Ohio. These sections of the Revised Statutes related to the same subject-matter now covered by Sections 13169, 13169-1, 13169-2 and 13169-3, General Code, passed March 24, 1915, 106 Ohio Laws, 108.
The general assembly of Ohio in enacting these sections of the General Code now under consideration in this case, guided by the decision of this court in the case of The State of Ohio v. Schmuck, supra, undertook to eliminate all the provisions in the old law in conflict with Sections 1, 14 and 19 of Article I of the Constitution of Ohio.
*435 These sections of the General Code as they now read contain no provision for the issuing of a warrant to search premises and seize property, nor requiring the written consent of the owner, or any other provision that would hinder the sale of the property described in these sections, as other personal property is bought and sold in the ordinary course of business; nor do these sections contain any provision that the use or possession of this property without the written consent of the owner shall be prima facie evidence that such use or such possession is unlawful.
These objectionable features were all contained in the original act, and they were the only provisions of that act discussed by the court in The State of Ohio v. Schmuck, supra. Therefore, the conclusion reached in that case can have no application to the case now under consideration, further than the fact that in that case the court found no constitutional objection to any of the provisions of the original act except the ones specifically referred to in the opinion.
However that may be, there is nothing in these sections of the General Code that prohibits acquiring, possessing, and protecting property, or that violates the right of anyone to be secure in his person, house, papers and possessions against unreasonable search and seizure; nor is there anything that authorizes the taking of private property from its owner for any purpose whatever.
It is contended, however, that these sections of the General Code are in conflict with Section 26 of Article II of the Constitution, Undoubtedly these *436 sections are laws of a general nature, but it is equally clear that they have uniform operation throughout the state upon every person brought within the relation and circumstances therein provided for, and in every locality where the condition exists. Assur v. Cincinnati, 88 Ohio St., 181; State, ex rel., v. Miller, 87 Ohio St., 12; State, ex rel., v. Creamer, Treas., 85 Ohio St., 349; Miller v. Crawford, 70 Ohio St., 207; State, ex rel., v. Spellmire, 67 Ohio St., 77, and Cincinnati v. Steinkamp, Trustee, 54 Ohio St., 284.
It is the settled law of this state that the general assembly in the exercise of the police power of the state has the right to make a classification based upon a sound, substantial reason, and before a court will interfere with this power and prerogative of the general assembly it must clearly appear that there is no valid reason for such classification. Bloomfield v. State, 86 Ohio St., 253, and Marmet v. State, 45 Ohio St., 63.
Ordinarily, personal property can be kept in the possession and under the control of its owner. He is in position to safeguard his property and can easily identify it should it wrongfully or unlawfully be taken from his possession; but not so with the property described in Section 13169 et seq., General Code. The use to which such property is put absolutely requires that it must pass from the possession of its owner into the temporary possession of the purchaser of the product marketed in such bottles, siphons, and other containers, and having once passed from the possession of the owner into the hands of a large number of cus *437 tomers he would have no means of protecting his property or identifying it from other articles of like kind, unless his name or other mark or device were branded, stamped, engraved, etched, blown, or otherwise produced upon the same. Not only this, but a confusion of this character of property would result in endless litigation, the cost of which would make the remedy more burdensome than the wrong.
The practical application of these statutes to this character of business and this character of property cannot injure any honest individual who recognizes and respects the rights of property, but, on the contrary, it will interfere only with the business of those, who, regardless of the property rights of others, take advantage of the extraordinary opportunity offered by the necessities of such business to appropriate this class of property to themselves.
These statutes are by no means an isolated example of legislative recognition of the fact that certain character of property and certain kinds of business demand legislation peculiar to the needs of such business or property. The statutes relating to junk dealers are particularly in line with the statutes under consideration, yet these statutes were held to be a necessary, reasonable and constitutional exercise of the police power. Phillips v. State of Ohio, 77 Ohio St., 214. This case was decided at the same term of court in which the case of The State of Ohio v. Schmuck, supra, was decided.
In the opinion in the case of Phillips v. State it is said, at page 217:
*438 “The general power of the legislature to determine what is necessary for the protection of the public interests being clear, judicial inquiry is necessarily limited to determining whether a particular regulation is reasonable, impartial and within the limitations of the constitution. The legislature is the judge of the mischief and the remedy, and of what shall be state policy, subject to the restrictions just mentioned.”
The opinion further calls attention to the peculiar nature of the business and the necessity of special laws and restrictions in reference thereto.
In the case of Wessell v. Timberlake, 95 Ohio St., 21, recently decided by this court, it was held that chattel loans on mortgage security or otherwise, the rate of interest on such loans, and the ways and means of assigning wages, are proper subjects for the exercise of the police power by the general assembly of the state.
A statute discriminating between persons selling products of their own raising, and those selling purchased products, has been held constitutional. Brown v. Toledo, 83 Ohio St., 491, affirming Toledo v. Brown, 22 O. C. D., 357.
Statutes regulating trades and professions, peddlers, ferrymen, tavern-keepers, the price of grinding corn, child labor, the sale of intoxicating liquors, the giving away of food without charge in places where intoxicating liquors are sold, and many others of a similar nature, relating to some particular business or some particular class of property, have also been held constitutional by this court.
*439 Perhaps one of the earliest recognitions of the need of legislation peculiar to certain classes of property is found in the statutes relating to horse-stealing. The statutes defining theft or larceny of property provide that whoever steals anything of value is guilty of larceny, and if the value of the thing stolen is $35 or more he shall be imprisoned in the penitentiary not less than one year, nor more than seven years.
The terms of this statute would include a horse as well as any other kind of property, for a horse is “a thing of value;” but in the pioneer days, when means of travel and communication between different parts of the country were slow and burdensome, a horse was a favorite subject of larceny, because it could easily be ridden or driven out of the locality in which it was stolen into distant parts, and the possibilities of overtaking the thief or recovering the property were much less than where other forms of property had been stolen. Therefore, a statute was passed making horse-stealing a separate crime, and imposing, not only upon the horse-thief but upon anyone who knowingly concealed him, a punishment of not less than one year, nor more than fifteen years. In other words, a person guilty of stealing property worth $1000 in money can not be sent to the penitentiary for more than seven years, yet one who steals a horse worth $100 may be sent to the penitentiary for fifteen years; yet no one doubts that the owner of the horse is entitled to this additional protection to his property over the protection afforded to other classes *440 of property, because the horse is not only easy to steal, particularly when in distant pastures, but also because the horse itself will furnish the means of transporting the thief and the stolen property to great distances from the locality of the crime.
Statutes have also been passed punishing other than under the general larceny statute the stealing of a will, the stealing of illuminating gas, or the making of a device for such purpose, the stealing of timber unlawfully cut, the carrying away of timber having a trademark, and, in later days, the legislature has recognized the need of legislation peculiar to motor vehicles, which have also become a favorite subject of larceny for the same reasons that, in earlier days at least, made horse-stealing so prevalent. All this legislation, peculiar to different kinds and character of property, has been sustained by this court because the reason and necessity for the same are apparent.
The statutes under consideration by this court in the case of State v. Schmuck, supra, were far more vulnerable to attack on the ground that they were repugnant to Section 26 of Article II of the Constitution than the sections of the General Code now under consideration, yet this court did not find those statutes in conflict with that section but in ‘conflict with Sections 1, 14, and 19 of Article I of the Constitution only.
These sections not only protect the owner of the property but also protect the public from fraud and imposition. The provisions in this act making it unlawful to refill the containers so marked or *441 branded, with intent to sell such contents, prevents the marketing of a spurious or inferior article as the genuine, and is an assurance to each purchaser that he is buying the goods of the manufacturer or dealer whose name or trademark is blown into or branded upon the containers.
It is further contended that injunction is not the proper remedy to compel obedience to the penal laws of the state. That of course is true, but the fact that wrongful interference with another’s property may constitute a penal offense is no reason for refusing a writ, if the plaintiff for other reasons is entitled to the same.
The petition avers that the defendant has ever since the 16th day of March, 1916, continued to gather, purchase, traffic, and otherwise take possession of the bottles of the plaintiff; that he threatens to and will, unless restrained by the court, continue to gather, purchase, traffic in and take possession of' said bottles, and will sell and otherwise dispose of the same; that the plaintiff has suffered and will continue to suffer great and irreparable damages; that it has no adequate remedy at law; and that it will be put to a multiplicity] of suits in order to recover its property unless de-J fendant be restrained by the court. *
It is clear that these averments are sufficient to authorize the court to grant a perpetual injunction if the allegations are sustained by proof.
The judgment of the court of appeals sustaining the demurrer to the petition is reversed, and the cause is remanded to that court with directions to *442 overrule the same, and for further proceedings according to law.

Judgment reversed.

Nichols, C. J., Wanamaker, Newman, Jones, Matthias and Johnson, JJ., concur.